UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Wayne Carter, Toni Cellucci, and Stacey Durgin, individually and on behalf of all similarly situated persons,<br>    Plaintiffs<br><br>vs.<br><br>New Hampshire Department of Health and Human Services, Commissioner,<br>    Defendant. | Dkt. # 1:07-cv-00023-SM |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS' REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFFS' MOTION FOR ATTORNEY FEES**

**I.   The Defendant's Vigorous Opposition to Class Certification, a Meaningful Remedy, and Monitoring Required Plaintiffs' Counsel to Engage in Extended Litigation of this Complex Case.**

This case was filed as a last resort after repeated efforts by Plaintiffs' counsel to resolve the problem of lengthy delays in the Department's processing of Medicaid APTD applications. See Doc. 27-2, page 3, footnote 3.  The Defendant's decision, after receipt of the Complaint, to confess judgment in favor of the three named Plaintiffs as individuals underscores the skill with which Plaintiffs' counsel drafted the Complaint. In opposition to Plaintiffs' fee request, the Defendant contends that his confession of judgment means that this case "can hardly be described as a 'complex class action' litigation". (Doc. 42-2 at 2).

Yet after the Defendant acknowledged his liability to the three named Plaintiffs, his apparent focus became opposition to an effective remedy in general, and, in particular, to three essential elements of what ultimately became the Final Order in this case:  class certification, an effective limit on the APTD application processing time, and

1

monitoring. To protect the thousands of disabled individuals affected by this case, Plaintiffs were required to devote extensive effort to litigation of class certification and potential remedies. The stark differences between the protections for Plaintiffs contained in the Final Order, Doc. 41, compared to Defendant's initial proposed remedy, Doc. 22, illustrate what the Class Members gained through the efforts of their counsel. While continuing to oppose class certification, the Defendant also sought to limit the Court's jurisdiction, the amount of reporting, the ability of Plaintiffs to independently verify compliance, and the meaning of significant terms such as "date of application" and "unusual circumstances."[1]

The dispute over the remedy became so contentious that Plaintiffs filed a contested request for oral argument, which the Court granted. (See Doc. 33 and 34). At the October 4, 2007 hearing and after questioning from the Court, defense counsel ultimately stipulated to class certification and the Court set a one-month settlement negotiation process. The agreed-upon Final Order grants Plaintiffs the critical protections which the Defendant had vigorously opposed.

**II.     Plaintiffs' Fee Application is Reasonable In Light of Their Efficacious Handling of this Litigation.**

The preparation time shown in the Plaintiffs' billing records, only part of the overall time devoted to the case, allowed Plaintiffs to litigate this case in an efficient and effective manner. Eight attorneys performed different integrated tasks in a productive collaboration -- see Gay Officers Action League v. Puerto Rico, 247 F.3d 288 (1st Cir. 2001) -- unlike the situation when a court might be skeptical of a claim "that several

---

[1] The parties filed eight substantive pleadings about the scope of the remedy. Docs. 13, 15, 19, 22, 24, 27, 29, and 32. These pleadings required complex knowledge, including the specialized welfare law application expertise of the National Center for Law and Economic Justice.

2

lawyers were required to perform a single set of tasks." See Lipsett v. Blanco, 975 F.2d 934 (1st Cir. 1992).[2]  The Defendant proposes eliminating all time of six attorneys, and then eliminating much of the time of the two remaining attorneys.  With respect to allegedly inadequate time records of those two attorneys, the Defendant would simply eliminate 100% of the time shown in those records.  This "total elimination" approach goes well beyond the authorities cited by the Defendant (Doc. 47-2).[3]

In his proposed elimination of all of the time of six attorneys, the Defendant would refuse to pay any attorneys fees for the following work:[4]  Attorney Redman researched and drafted the class certification motion and memorandum of law.  See Doc. 46-4.  Attorney Lavallee worked with two of the named plaintiffs, drafted parts of substantive pleadings filed about class certification and the remedy, and represented Plaintiffs at the Fairness Hearing.  See  Doc. 45-11.  Attorney Drought drafted Plaintiffs' Proposed Final Order, was one of two co-counsel during two settlement negotiations attended by two members of the attorneys' attorney generals, and was the primary editor of all court papers.  See Doc. 45-13.  Attorney Cohan and Mannix's knowledge of welfare rights litigation and possible remedies allowed Plaintiffs' other counsel to spend

---

[2] Defendant's analysis of billing rates is also flawed.  None of Defendant's billing rate information pertains to 2008 billing rates for complex class action litigation in the United States District Court for the District of New Hampshire.  See Johnson v. Georgia Highway Express, Inc., 488 F.2d. 714 (5th Cir. 1974) and Plaintiffs' Memorandum, Doc. 45-2, page 7.  In particular, Judge DiClerico has found that the Scott letter (Doc. 45-13) was not persuasive.  Hawkins v. Commissioner, Opinion No. 2005DNH085 (May 25, 2005) at 22 (order pertaining to Medicaid class action attorneys' fees dispute).  The Defendant continues to rely on that Scott letter, written in 2004.

[3] Torres-Rivera, et. al. v. O'Neill-Cancel, No. 07-1806 at *7, *18-*19 (Ist. Cir. April 30, 2008)(upheld a 15% global reduction for offending entries). Even after finding that time records are insufficient, in the decisions cited by Defendant, the courts employed a percentage reduction or reduced a portion of the hours billed but did not eliminate all of the time.

[4] Defendant excluded all the time of six attorneys, simply based upon the assertion that two lawyers could have litigated the case.  This exclusion is not justified, as the work described in this paragraph would have necessarily have had to have been done by another member of the Plaintiffs' team.

3

less time researching those issues. See Doc. 45-19 and 46-2. Aaron Ginsberg responded to questions from putative class members about the notice of proposed class action settlement. See Doc. 45-17.

The Defendant also unreasonably excludes much of the time spent by Plaintiffs' counsel on phone conferences between counsel. Defendant excluded all of the time at five conferences.[5] Defendant also excluded all of the time spent when co-counsel Drought and Lavallee discussed the case with Attorneys Mortell and/or Messer on other dates.[6] Yet Plaintiffs exercised rigorous billing judgment and did not bill for every attorney who actually attended each conference. The conferences occurred at key times and allowed Plaintiffs to efficiently and effectively move the case forward. Yet Defendant did not even allow any of the time spent by Attorneys Mortell and Messer at those particular phone conferences. See Doc. 47-7 and 47-8.

Other examples of unreasonable time reductions are as follows: Defendant completely eliminated twelve time records for Attorney Messer and Mortell solely for code 4, Doc. 47-9, undifferentiated time entries/multiple task. Each of these records gives enough detail to support work done. Defendant completely eliminated six time records for Attorney Messer and Mortell solely for code 5, Doc. 47-9, vague, general entry. Yet the exact information covered in the strategy conference for which Attorney Messer billed 1.5 on January 29, 2007 is seen in the records of other attorneys. Attorney Messer's billing of 3.3 hours on October 27, 2007 and October 28, 2007 for "working on settlement papers" was excluded. Those settlement papers were negotiated, finalized,

---

[5] January 29, 2007; April 5, 2007; April 12, 2007; June 19, 2007; and July 18, 2007.
[6] April 17, 2007; May 7, 2007; May 30, 2007; June 13, 2007; August 2, 2007; September 21, 2007; October 3, 2007; October 22, 2007; and October 23, 2007.

4

and filed on November 5, 2007 and are thus within the knowledge of the Defendant and the Court.

The Defendant also seeks to exclude 48.85 hours which three attorneys spent responding to inquiries from many different putative class members about the proposed class settlement. This time is considered by the Defendant as a "wasteful transfer of state resources." Doc. 47-2. Yet the presence of class members at the March 18, 2008 Fairness Hearing illustrates the significant interest in the outcome of this litigation, and the importance of class counsel's role in informing class members about its resolution.

### III.  Plaintiffs Are Entitled to Recover Future Monitoring Fees.

The Defendant does not address applicable Supreme Court and First Circuit precedents relied upon by Plaintiffs (Doc. 45-2 at 11) to establish their entitlement to future monitoring fees. Instead, Defendant reaches back to the October 4, 2007 hearing when the parties and the Court addressed two competing proposed remedial schemes, neither of which was entered as the Final Order. At that hearing, Plaintiffs did not make any concessions with respect to fees for their work. The Court strongly encouraged the parties to try to resolve their differences. Plaintiffs did heed the Court's comments by working hard to reach agreement on a streamlined Final Order which still gives Class Members the protections which the Defendant had been previously unwilling to agree to. Plaintiffs ask that the Court allow them to recover reasonable monitoring fees.

    Respectfully Submitted,

    **WAYNE CARTER, TONI CELLUCCI,**
    **AND STACEY DURGIN,**
    **PLAINTIFFS**

                                        Through their Attorneys,
                                        **NEW HAMPSHIRE LEGAL ASSISTANCE**

Dated: May 19, 2008         /s/ Bennett B. Mortell
                                        Bennett B. Mortell, Esquire
                                        NH Bar No. 12131
                                        24 Opera House Square, Suite 206
                                        Claremont, NH  03743
                                        (603) 542-8795
                                        bmortell@nhla.org

                                        Christine D. Lavallee, Esquire
                                        NH Bar No. 13057
                                        1361 Elm Street, Suite 307
                                        Manchester, NH 03101-1323
                                       (603) 663-2900
                                        clavallee@nhla.org

                                        **DISABILITIES RIGHTS CENTER, INC**

                                        Amy B. Messer, Esquire
                                        NH Bar No. 8815
                                        AmyM@drcnh.org

                                        Adrienne C. Mallinson, Esquire
                                        NH Bar No. 17126
                                        AdrienneM@drcnh.org
                                        18 Low Avenue, PO Box 3660
                                        Concord, NH  03302-3660
                                        (603) 228-0432

## CERTIFICATION

May 19, 2008

     I hereby certify that a copy of the foregoing has been served this day by ECF filing, on Defendant's counsel, Nancy J. Smith and Glenn A. Perlow.

                                        /s/ Bennett B. Mortell
                                        Bennett B. Mortell