UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Wayne Carter, Toni Cellucci,
and Stacey Durgin, individually
and on behalf of all similarly
situated persons,
    Plaintiffs

   v.      Civil No. 07-cv-23-SM
       Opinion No. 2009 DNH 040
Nicholas A. Toumpas, Commissioner[1]
of the New Hampshire Department
of Health and Human Services,
in his official capacity

**O R D E R**

Counsel for the named plaintiffs and subsequently certified class seek an award of attorneys' fees. As prevailing parties in this civil rights action they are entitled to recover "a reasonable attorney's fee" as part of the costs of bringing the suit. 42 U.S.C. § 1988.

The court must exercise discretion in determining an appropriate award, taking into account the hours reasonably expended, a reasonable hourly rate, and other familiar factors that may warrant an adjustment upwards or downwards. Hensley v. Eckerhart, 461 U.S. 424 (1983); Coutin v. Young & Rubicam P.R., 124 F.3d 331, 337 (1st Cir. 1997).

---

[1] Commissioner Toumpas succeeded Commission Stephen while this litigation was pending.

**The Lodestar**

The starting point in determining a reasonable fee is the "lodestar," that is, the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate. The party seeking a fee award bears the burden of documenting the number of hours reasonably expended by counsel, as well as the reasonable hourly rate. Hensley, 461 U.S. at 433. Offering contemporaneous time records detailing the discrete legal tasks performed is the preferred method of supporting fee claims. If the documentation is inadequate, the court may reduce the award accordingly.

The fee applicant is also expected to exercise "billing judgment," excluding hours not "reasonably expended" and time that was excessive, redundant or otherwise unnecessary. Hensley, 461 U.S. at 434. Generally speaking, hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute. Id.

The lodestar amount, then, includes only those hours the court determines were reasonably expended in litigating the case, multiplied by a reasonable hourly rate.

**Hours Reasonably Expended**

This case was neither particularly novel nor complex. The Disability Rights Center, Inc., and New Hampshire Legal Assistance recognized the obvious — that the State of New Hampshire, acting through its Department of Health and Human Services, was plainly failing to meet its federal statutory and regulatory obligations to promptly make eligibility decisions on applications for benefits under the Aid to the Permanently and Totally Disabled Program ("APTD"), and to notify benefit applicants of the right to an administrative fair hearing to contest extended delays. The Department's obligations under applicable federal law were not in doubt, nor was its failure to meet those obligations. Accordingly, when this suit was filed, the Department did not contest plaintiffs' claims on the merits. The Department's first responsive pleading was a motion for entry of judgment against itself. Essentially, the Department confessed liability. The only remaining issue was the specific nature of the relief to be afforded.

Plaintiffs' counsel insisted, not unreasonably, upon proceeding with its request for class certification to ensure that the relief would be systemic in nature. The parties were directed by the court to devote their attention to negotiating an agreed-upon order that would afford appropriate relief, and, in

due course, that was accomplished.  The class was certified and the order granting relief entered.

Plaintiffs' counsel now seek fees and costs in a total amount of $123,571.38, for 408 hours of work by eight different attorneys, from three different legal services organizations, at hourly rates ranging from $189.16 to $372.50.  In support of that fee application, counsel have submitted billing records that reflect contemporaneous time-keeping, and, in general, describe the legal tasks performed.  The detail and specificity of those records are poor, leaving the court to speculate far too often about just what was being done (e.g. "phone conf about filing case w/BM and KD," "call to [Name], who got class notice," "moot court," "planning for conference call with litigation partners").

At first blush, the fee application seemed to be plainly excessive, likely due to overstaffing.  "Overstaffing is a familiar problem in cases in which fee-shifting is in prospect." United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 43 (1st Cir. 2008).  Billing references to multiple conferences among "litigation partners" also raised some doubt about the necessity of so many lawyers working on such a straightforward legal matter.  The undisputed merits of this case hardly seemed to require joinder of a consortium of legal services providers to

effectively pursue it.  Detailed review of the submitted time sheets validate that initial reaction.

Two attorneys performed the bulk of meaningful work on this litigation — Amy Messer, Esq., of the Disabilities Rights Center, and Bennett Mortell, Esq., of New Hampshire Legal Assistance. Other counsel, by and large, merely reviewed that work, participated in general strategy or policy discussions, or attended hearings handled by lead counsel.

Attorney Messer is very experienced in disabilities rights litigation, including class actions, and is regarded by the court as a highly skilled and effective litigator.  Attorney Mortell, is less experienced than Attorney Messer, but is fairly equated to a capable junior partner at a quality law firm.  Attorney Messer could have handled this matter alone, but litigation of this nature does normally require at least two attorneys.  While some additional support work from other counsel is to be expected from time to time, this case did not require the staffing allocated to it — employing eight lawyers from three different legal services organizations was both unnecessary and unproductive.  "As a general matter, the time for two or three lawyers in a courtroom or conference when one would do may obviously be discounted.  . . .  A trial court should ordinarily

greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) (citation and internal punctuation omitted).

The billing records disclose repetitive conferences among multiple counsel, excessive time spent on, and duplicative drafting work, as well as unnecessary, duplicative, and unproductive reviews of drafts of pleadings and memoranda. For example, a motion for oral argument hardly requires nearly two hours to draft, review, revise and file, as claimed, particularly given this court's well known policy of affording oral argument on motions upon request, absent some compelling reason to deny it (e.g., a frivolous motions).

After reviewing the submitted time sheets and taking into account the straightforward nature of the claims and virtual certainty of the result, and the often duplicative, unnecessary and excessive time spent on tasks that added little of productive value to the litigation's successful prosecution, and considering what reasonable counsel would have legitimately billed a paying client under like circumstances, the court has adjusted the claimed hours to arrive at a reasonable number of hours expended on the litigation. See Grendel's Den, Inc. v. Larkin, 749 F.2d

945 (1st Cir. 1984).  While defendant has interposed many valid objections to the requested hours on the grounds referenced, the court disagrees that the full reduction sought by defendant would result in a reasonable fee under the circumstances.  The following adjustments are made.

**Attorney Bennett B. Mortell**

Attorney Mortell seeks recovery for some 172.7 hours.  Many of the time charges submitted are indefinite with respect to the specific tasks performed, relate to preparation for and attendance at unnecessary and repetitive meetings with co-counsel, or allude to multiple phone calls with putative class members "who got class notice," without elaboration.  A legitimate argument can be made that the itemization is inadequate to a larger degree than found by the court, but the court will reduce Attorney Mortell's claimed hours by a total of 50.  That reduction fairly accounts for excessive, unproductive and unnecessary work.  That reduction represents approximately 20 hours related to the multiple phone calls from "class members who got notice" referred to earlier, the subject matter of which could and should have been handled as a routine clerical matter by clerical staff.  The additional 30 hours of reduction represents the court's culling out vague and duplicative charges or reducing those that involved more time than reasonably

necessary, or that were unnecessary altogether (e.g., "moot court," preparation for excessive co-counsel meetings, excessive conference calls, excessive review and drafting of pleadings).

The bulk of the work on this case was performed by Attorney Mortell and the balance of the hours claimed was reasonably necessary to pursue it effectively and with reasonable efficiency.  Attorney Mortell's collaboration with Attorney Messer was also reasonable and necessary.  With some exceptions noted later, the other six lawyers participating were not necessary in assisting Attorneys Mortell and Messer, and the time they expended was not reasonable in the context of a fee request.

**Attorney Amy Beth Messer**

Attorney Messer acted essentially as senior counsel, reviewing much of Attorney Mortell's drafting work and litigation activity.  She also participated in negotiating an appropriate order affording appropriate class relief.  As noted earlier, Attorney Messer and Attorney Mortell were quite capable of handling this rather uncomplicated case without additional legal assistance.  While I recognize that the legal services culture tends to encourage more, rather than less, staffing on cases seen as vehicles of systemic reform, in part no doubt for the training and experience opportunities presented, still, a defendant

subject to fee-shifting obligations is not required to pay fees beyond what was reasonable under the circumstances.

Attorney Messer is quite familiar with civil rights litigation in this court, is very capable and effective, can and has successfully negotiated similar, but far more complicated, settlement agreements with the State, and is more than up to the task of supervising litigation of this type.

Attorney Messer seeks reimbursement for 67.55 hours of work in this case.  I find her time expenditures to have been productive, useful, and reasonable in the main.  However, I have reduced her total claimed hours by 18.9 to arrive at a reasonable number of hours expended.  That reduction reflects sometimes vague descriptions of the actual legal work performed, excessive and unnecessary communication among multiple counsel, as well as multiple and unnecessary conferences among the many assigned co-counsel.  I have allowed many hours that arguably were duplicative of Attorney Mortell's work, but, in retrospect, Attorney Messer's experienced review and assistance was appropriate and no doubt contributed substantively to the successful negotiation leading to the relief obtained.

**Attorney Kay E. Drought**

Attorney Drought claims reimbursement for 69.5 hours. Having reviewed the supporting time sheets, and given the straightforward nature of this case, I have reduced that claim to 8 hours of time reasonably expended in pursuing this litigation. Attorney Drought is of course capable, effective and efficient in her practice.  But, her effort was simply not reasonably necessary to this litigation, with the exception of occasional tasks related to drafting pleadings and, more substantively, her participation in negotiating sessions with the State.  The rest of her billed time related to multiple conferences and telephone calls among multiple and unneeded counsel, unnecessary and duplicative review or editing of others' work, administrative coordination, and participation in duplicative and unnecessary strategy sessions.  Attorney Drought's time charges also reflect the same vagueness and lack of specific descriptions of work actually done, but Attorney Drought's drafting and negotiating contributions were valuable, reasonable, and assisted in achieving the favorable outcome for the class plaintiffs.

**Attorney Christine D. Lavallee**

Attorney Lavallee has submitted time charges adding up to 39.5 hours for which she seeks reimbursement.  Having carefully reviewed those time charges, the same conclusions apply with

respect to lack of specificity in describing what legal tasks were performed, and, the overall claim is excessive given that two attorneys (Messer and Mortell) were more than able to handle this case.  I have identified 7.7 hours of work among the total claimed that can fairly be said to have contributed to the litigation effort in a non-duplicative, useful, and reasonable manner.

Attorney Lavallee interacted with clients and potential clients at the outset, prepared notes for Attorney Mortell, and performed some discrete legal research tasks.  Otherwise her time was largely duplicative of work done by others, and was unnecessary (e.g., preparing and attending hearings already capably covered by others).

**Attorney Laura Redman**

Attorney Redman seeks reimbursement for 22.6 hours expended on this litigation.  Most of that time, as reflected in the submitted time sheets, consisted of work duplicative of research seemingly done by others.  However, time she devoted to class certification issues appears to have been reasonable, not duplicative, and useful.  Accordingly the court finds 2 hours to be reasonable as an adjunct contribution to the principal efforts of Attorneys Messer and Mortell.

11

**Attorneys Marc Cohan, Gina Mannix and Aaron Ginsberg**

Time sheets submitted to support fees claims for work done by Attorneys Cohan, Mannix, and Ginsberg disclose activity that was entirely duplicative of work done by others, or work which was otherwise unnecessary.  Attorney Ginsberg's time appears to have been spent almost entirely in connection with telephone conferences of an undisclosed nature with "class members."  Given the vague description, I conclude that those phone calls were just as likely to have been clerical in nature and should have been handled by clerical or administrative staff.  Attorney Mannix's time was essentially applied to unnecessary and redundant review of pleading drafts and conference calls with the other counsel about strategy and procedure, none of which was reasonably necessary in this straightforward case.  Her work merely duplicated capable efforts by Attorneys Messer and Mortell.  Similarly, Attorney Cohen's time was devoted to unnecessary review of drafts and pleadings and communication with other counsel about strategy, none of which was reasonably necessary to the successful prosecution of this litigation.

None of the time expended by Attorneys Cohen, Mannix or Ginsberg was reasonably expended in connection with the representation provided in this case, and defendant should not be required to pay for that time.

**Travel**

Travel time will be allowed at one-half the hourly rate determined to be reasonable with respect to this matter. See e.g., Furtado v. Bishop, 635 F.2d 915, 922 (1st Cir. 1980) (discouraging compensation at professional rates for travel time); Maceira v. Pagan, 698 F.2d 38, (1st Cir. 1983) (one-half hourly rate adequate travel compensation). Travel time as claimed by Attorneys Drought and Mortell, is found to be reasonable as claimed. Travel time claimed by Attorney Lavallee to attend a hearing along with numerous other counsel was not reasonably necessary, and is disallowed.

**Monitoring**

It perhaps stretches the point to argue that post-judgment monitoring is required in this case to ensure the State's compliance with the court's order. Given that the State recognized its liability at the outset and agreed to the essential relief afforded, the court presumes the State will comport itself as required by the law, and will not put itself in the position of risking a contempt citation. Nevertheless, in fulfilling their own professional responsibilities, counsel to the class will be required to occasionally review reports provided for in the order to spot-check compliance.

The court will include an award of fees for 4 hours of Attorney Messer's time to cover reasonable post-judgment review of reports of the State's compliance. That time should be more than adequate for counsel to determine whether the state is not in compliance. Should an enforcement action become <u>reasonably</u> necessary, work <u>reasonably</u> associated with developing that action, if successful, will be considered for a reasonable fee award at that time.

## Reasonable Hourly Rate

Plaintiffs seek an hourly rate for Attorney Messer's time at $334.16, Attorney Mortell's time at $271.66, Attorney Drought's time at $365.00, and Attorney Lavallee's time at $238.33. In support of those rates plaintiffs have filed affidavits from several accomplished members of the New Hampshire Bar opining that the reasonable hourly rate charged in New Hampshire for work associated with federal litigation varies by attorney, from a low of $175.00 per hour to a high of $485.00 per hour. Defendant counters with a somewhat dated opinion letter, also from accomplished counsel, suggesting that a reasonable hourly rate (in 2004) would range from $150.00 to $225.00 per hour, depending upon the attorney's skill and experience. The court finds that plaintiff's proffer is decidedly skewed to the high side while defendant's is skewed to the low.

14

The hourly rate multiplier should reflect the "prevailing market rates in the relevant community," here, New Hampshire. Blum v. Stenson, 465 U.S. 886, 895 (1984).  Legal Services attorneys generally do not charge anything close to market rates for their services, and often charge clients nothing at all. Generally, non-profit organizations are entitled to be compensated at the market rate of the legal community at large. Blum v. Stenson, 465 U.S. at 895-96.  Under these circumstances, then, the court may use "counsel's standard rate, or the prevailing market rate in the forum, or a reasonable rate in between."  One Star Class Sloop Sailboat  546 F.3d at 41; see also Maceira v. Pagan, 698 F.2d at 40.  New Hampshire attorneys of skill and ability comparable to that of Attorney Messer can reasonably expect to charge about $300 per hour for legal services related to litigation in this court.  Attorney Drought's reasonable hourly rate would be the same.  Those with skill and experience equivalent to that of Attorney Mortell could reasonably expect to charge $225 per hour, and Attorney Redmond and Lavallee's rate would be the same.

**Fee Award**

While recognizing that it is difficult to accurately identify, retrospectively, what legal work was truly excessive, unnecessary, duplicative and inefficient, still, in this case I

am comfortable in concluding that the fee request as submitted is not realistic. That is particularly so given the nature of the claims, the near certainty of result, the confession of liability by the State at the outset, and the expectation that reasonable counsel ought to be able to agree upon appropriate relief in short order under such circumstances. I am also confident that but for the obvious overstaffing, this case could have been handled by Attorneys Messer and Mortell in less than 125 hours total, if it had been left to their own control and judgment, and relieved of the obligation to call, conference, discuss, review and explain all aspects of the case among three separate legal services organizations. I am approving reasonably compensable hours in excess of that number, however, because I have reviewed the time sheets in detail and approval of less time would not fairly account for unavoidable inefficiencies and uncertainties as litigation progresses. Counsel cannot anticipate every development and must sometimes prepare for circumstances that do not arise. The court determines the lodestar amount to be as follows.

| | | | |
|---|---|---|---|
| Attorney Messer | 48.65 hours | $300.00 | $14,595.00 |
| Attorney Drought | 8.0 hours | $300.00 | $ 2,400.00 |
| Travel | 9.0 hours | $150.00 | $ 1,350.00 |
| Attorney Mortell | 122.7 hours | $225.00 | $27,607.50 |

|  |  |  |  |
|---|---|---|---|
| Travel | 13.7 hours | $112.50 | $ 1,541.25 |
| Attorney Lavallee | 7.7 hours | $225.00 | $ 1,732.50 |
| Attorney Redman | 2.0 hours | $225.00 | $   450.00 |
| Monitoring | 4.0 hours | $300.00 | $ 1,200.00 |
|  |  | TOTAL | $50,876.25 |

I do not find any reason to adjust the lodestar amount either upwards or downwards in this case.  Plaintiffs point to other civil rights litigation as similar and stress that higher fees awards were approved.  But in those cases the award of fees were stipulated and/or those cases were far more work-intensive, involving disputed issues, uncertain outcomes, discovery, extensive motions practice, lengthy negotiations, and exceptional results.  That is not the case here.  This was not an unimportant matter by any means, and the relief obtained was meaningful to a large and vulnerable population, but the award made fairly and reasonably compensates counsel for the legal work reasonably required to accomplish that predictable result.  Defendant should be required to pay no more.

Indeed, while the record is not clear on this point, and defendant has not pressed it, an argument might be made that this dispute could have and probably should have been resolved by agreement even before suit was filed.  See, e.g., Spegon v.

17

<u>Catholic Bishop of Chicago</u>, 175 F.3d 544, 553 n.4 (7th Cir. 1999). Certainly plaintiffs were under no obligation to refrain from filing suit, but failure to pursue settlement reasonably attainable does reflect on later claims for substantial fees under fee-shifting statutes. <u>Id</u>.

## Conclusion

Plaintiffs, as prevailing parties, are awarded $50,876.25 in reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 31, 2009

cc: Christine D. Lavallee, Esq.
    Catharine A. Mallinson, Esq.
    Amy B. Messer, Esq.
    Bennett B. Mortell, Esq.
    Glenn A. Perlow, Esq.
    Nancy J. Smith, Esq.

<u>Catholic Bishop of Chicago</u>, 175 F.3d 544, 553 n.4 (7th Cir. 1999). Certainly plaintiffs were under no obligation to refrain from filing suit, but failure to pursue settlement reasonably attainable does reflect on later claims for substantial fees under fee-shifting statutes. <u>Id</u>.

## Conclusion

Plaintiffs, as prevailing parties, are awarded $50,876.25 in reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 31, 2009

cc: Christine D. Lavallee, Esq.
    Catharine A. Mallinson, Esq.
    Amy B. Messer, Esq.
    Bennett B. Mortell, Esq.
    Glenn A. Perlow, Esq.
    Nancy J. Smith, Esq.